373 P.2d 922

Waldo HAY and Donald Bruce, Plaintiffs,

v.

CLASS B SCHOOL DISTRICT NO. 42, BEN-
EWAH COUNTY, State of Idaho, and Don-
ald W. Evans, Wayne Daman, Walter Wet-
ter, John Berreth, and Henry Brede, con-
stituting the members of the Board of
Trustees of said School District, Defend-
ants.

No. 9124.

Supreme Court of Idaho.

Aug. 3, 1962.

J. Ray Cox, Jr., Coeur d'Alene, for appellants.

Richard L. McFadden, St. Maries, for respondents.

TAYLOR, Justice.

Upon plaintiffs' petition this court issued its alternative writ of mandate to require the defendant school district and its trustees to comply with the provisions of paragraph (f) of proposal IV of the plan upon

which the defendant district was organized. The district was organized in Benewah county in January, 1949, under the provisions of the "Act for Reorganization of School Districts," S.L.1947, c. 111, I.C. §§ 33-501 to 33-529.

The plaintiffs are residents and taxpayers of areas which formerly had been common school districts. Upon the reorganization these former districts became parts of the defendant district. These former districts had not been maintaining schools within their boundaries, but had been sending their children to schools in the State of Washington, pursuant to annual contracts made between the respective school districts.

The plan for reorganization was prepared by the county committee, approved by the state committee, and ratified by the electors of the proposed district—all as required by the reorganization act.

Paragraph (f) of proposal IV of the plan was as follows:

"(f) That the pupils in the Liberty, District #10, and in Bluebell, District #11, and the Rock Creek District #32 who live near the State and County lines will continue to be transported to the nearest and most convenient schools either in the State of Washington or another County of Idaho, ' and all others in the above mentioned districts will be transported to the Plummer Schools. That all of the students attending school ouside of this County shall have tuition paid by the new Class B District and said District shall provide transportation to the school Districts educating these pupils."

Pursuant to this arrangement the trustees of the defendant district each year following the reorganization entered into contracts with school districts in the State of Washington for the attendance, transportation and tuition of the children of residents of the three districts mentioned in paragraph (f). The annual cost per pupil paid by defendant to the Washington schools had been $150.03 per year. In 1961 the defendant district was advised by the Washington schools that defendant would be required to pay for each student attending Washington schools an amount equal to the average cost per pupil incurred by those schools in the operation and maintenance thereof. At that time the average was estimated at $600 per student per year. Two of the Washington schools thereafter advised the defendant district that their average per pupil costs were $451.50 and $571.45, respectively, and indicated they would accept Idaho students for the coming school year at those rates. The average cost of the defendant district was

determined to be approximately $383 per pupil per year.

Following receipt of this information, the trustees of defendant district decided not to contract for the schooling of any children of the district in the State of Washington, and, instead, to provide for their transportation to, and attendance at, Plummer, where the school plant of the district is maintained. This action was protested by some of the patrons of the former school districts mentioned in said paragraph (f). December 12, 1961, the defendant board of trustees held a meeting at which the protesting patrons and their attorney were given a hearing. After the hearing the board again voted to discontinue sending the students to schools in the State of Washington. This action resulted in the filing of the petition herein.

It is plaintiffs' position that the proposal as contained in the foregoing paragraph (f), after having been approved by the county committee, the state committee and the electors of the district, is binding upon the trustees in perpetuity and requires them to continue contracting for the education of the students residing in the three named districts, in schools in the State of Washington or other schools nearby. They allege that the proposal to transport their children to Plummer would result in 12 to 15 miles additional travel each way, for their children, with its concomitant hazards and inconvenience.

The plaintiffs tacitly admit the general authority of the trustees in the premises, but urge that their authority is limited and controlled by the provisions of paragraph (f) of proposal IV of the plan under which the district was organized. The question presented is whether the adoption of the plan containing this proposal becomes a binding compact between the reorganized district and the patrons of the former districts.

Defendants contend that the proposals contained in the plan were not intended to, and do not, constitute a rigid, fixed and perpetual pattern for the operation of the schools of the district. They call attention to the fact that the school laws of the state contemplate the operation of school districts upon an annual fiscal basis. Idaho Code, § 33–401, in effect at the time of the district's reorganization (since repealed), provided authority to the trustees of school districts to contract for the attendance of children of the district in other districts and that agreements therefor "shall be valid for one school year." Idaho Code, § 33–401a authorizes trustees of school districts to contract for the attendance of children of their districts at the schools of another state,

"Whenever it shall appear to the satisfaction of the board of trustees of

any school district abutting on the boundary of this state that it is to the interest, benefit, or advantage of such district, and any of the pupils residing therein, that such pupils attend the school or schools of the district in another state, * * *."

Idaho Code, § 33–402 authorizes trustees to enter into contracts for the attendance of Idaho students in the schools of a bordering state whenever it is made to appear to the trustees "by the petition of at least thirty per cent of the qualified electors of such district, or whenever a two-thirds majority of such board shall be of the opinion, that instruction for all persons of school age residing in such district can be more advantageously and economically furnished by a school * * * in another state," the Idaho district shall submit the issue to the electors as to whether the Idaho school shall be discontinued and the contract entered into with the adjoining districts in such other state. If two-thirds of the voters are in favor of the proposal the trustees are authorized to enter into such agreement.

Idaho Code § 33–427 provides authority to trustees of affected districts, at meetings held for such purpose, to provide for the attendance of pupils in districts outside those of their residence, and, further, that "such agreement shall be valid for one year."

■ From the foregoing provisions, it is clear that whether children from one district shall be permitted or required to attend school in another district, in or out of the state, except where a vote of the electors is required, is left to the discretion of the trustees of the district wherein they reside.

The trustees of the defendant district did not determine "that it is to the interest, benefit, or advantage of such district" or of "any of the pupils residing therein, that such pupils attend" school in another state. This was a statutory prerequisite to a contract therefor.

■ We agree with defendants' contention that the adoption of the plan did not make permanent the proposals therein. One of the proposals was, "Said district will employ 15 teachers." Obviously, that was not intended to be a permanent arrangement regardless of the expansion or contraction of the district or its population.

Proposal IV provided:

"(a) That Plummer, District No. 12, will maintain the high school with an approximate average daily attendance of 100; and an elementary school of all grades with an approximate average daily attendance of 160."

Obviously, such attendance was not intended to be permanent.

Subsections (b), (c), (d), (e) and (h) of proposal IV contain specific provisions for the maintenance of various attendance units involving various grades in different areas of the district. None of these were intended to be permanent arrangements. In fact, defendants in their return assert that some of these have been discontinued by the trustees and are no longer in effect. The establishment and discontinuance of attendance units, except as limited by statute, is left to the discretion of the trustees. I.C. §§ 33–522, 33–714, 33–716, 33–717; Wellard v. Marcum, 82 Idaho 232, 351 P.2d 482.

The residents of the previously existing districts in voting their approval of the plan for reorganization were charged with knowledge of the discretionary power vested in the trustees, by the statutes, to make such changes in the operation of the schools of the district, and the place of attendance of the children of its various areas, as changing conditions might warrant or require.

The alternative writ is quashed and the petition dismissed.

Costs to defendants.

SMITH, C. J., and KNUDSON, McQUADE and McFADDEN, JJ., concur.